United States Court of Appeals,

Fifth Circuit.

No. 92-2021.

Lawrence WILLIAMS, Robert Masters, and Celestine Williams, Plaintiffs-Appellants,

Signal Mutual Insurance Association, Ltd., Intervenor/Plaintiff-Appellant,

v.

M/V SONORA, et al., Defendants,

Atlas Shipping, Ltd., and Transportacion Maritima Mexicana, S.A., et al., Defendants-Appellees.

March 12, 1993.

Appeal from the United States District Court For the Southern District of Texas.

Before REYNALDO G. GARZA, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The plaintiffs-appellants appeal from an adverse summary judgment entered by the district court. First, they argue that the district court should have remanded the case to state court. Alternatively, they argue that the summary judgment in favor of the defendant vessel owners was improvidently granted. We find that the case was properly retained by the district court. Further, the courts below properly granted summary judgment to the defendant vessel owners. Therefore, WE AFFIRM.

FACTS

The plaintiffs were injured while loading pipe on board the M/V Sonora ("Sonora"). The Sonora is owned by Transportacion Maritima Mexicana ("TMM"), which is a wholly owned subsidiary of Atlas Shipping Ltd. ("Atlas"). Petroleos Mexicanos ("Pemex") wished to ship the pipe on the Sonora and Fairway was hired to provide the stevedore operations of loading the Sonora. The load should have been stripped[1] according to everyone's agreement. However, due to inadvertence

---

[1] When a load of pipe is stripped there is a contoured piece of wood between each layer of pipe that compartmentalizes the pipe and steadies the load. It is apparently possible to load unstripped pipe on a vessel; however, this is normally attempted only with a piece of heavy equipment called a "Big John."

or oversight, Pemex delivered some of the cargo in unstripped fashion.

When the load arrived, the TMM representative, Joe Baroody, said that he would not accept the pipe in unstripped form.[2] The Pemex representative apparently threatened to withdraw from the deal if TMM did not accept the unstripped pipe. Soon thereafter, Baroody had a change of heart and accepted the load.

Fairway was unprepared to handle unstripped pipe because it did not have a Big John on hand. Fairway attempted to load the pipe with the ship's winch. The Pemex representative, Chapa, apparently protested to Baroody, but Baroody said "leave it to the experts." The first load of pipe was put on the ship without incident.[3] The second load of pipe fell on the plaintiffs, Williams and Masters, and they were injured.

## PROCEDURE

Williams and Masters filed suit in state court at the 127th Judicial District Court of Harris County, Texas, on February 7, 1990. On March 2, 1990, defendant, Pemex, removed the case to the Southern District of Texas. Pemex removed under the Federal Sovereign Immunities Act ("FSIA") removal provisions, which are codified at 28 U.S.C. § 1441(d).[4]

Once in federal court, Pemex asserted the FSIA as a bar to subject matter jurisdiction. On June 4, 1991, the Magistrate found that all claims against Pemex should be dismissed for lack of subject matter jurisdiction. Prior to the district court's ruling, the parties filed a joint motion to voluntarily dismiss Pemex. On August 27, 1991, the district court dismissed Pemex in accord with the joint motion.

After Pemex was dismissed, on September 12, 1991, the district court adopted the magistrate's June 4th ruling and recommendation. Pursuant to the magistrate's proposed disposition,

---

[2]Baroody knew that it was dangerous to load unstripped pipe and this is precisely why he initially refused to accept the load.

[3]The appellees contend that the first load was unstripped; however, the Appellants' contend that the first load was stripped. Therefore, according to the appellants the first attempt to load unstripped pipe resulted in the accident.

[4]It is undisputed that Pemex is a federal sovereign.

TMM and Atlas, the Sonora's owners, were granted summary judgment. The court concluded that the vessel's owners were entitled to judgment as a matter of law.

Magistrate Pecht noted that *Scindia Steam Nav. Co., Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) established three exceptions to the general rule that a vessel owner owes no duty to the stevedore. The third prong of *Scindia,* as articulated by our circuit, imposes a duty upon the vessel owner to intervene in the stevedore's operation and eliminate any hazard when the stevedore is obviously acting improvidently. *See Helaire v. Mobil Oil,* 709 F.2d 1031, 1036 (5th Cir.1983) (*citing Scindia,* 451 U.S. at 175, 101 S.Ct. at 1626).

The magistrate concluded that the duty to intervene is not triggered unless "a defective appurtenance of the vessel caused or contributed to the injury." *See Carpenter v. Universal Star Shipping, S.A.,* 924 F.2d 1539 (9th Cir.1991), *cert. denied,* --- U.S. ----, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992). The magistrate, relying on the previously cited *Ninth Circuit authority,* noted that the plaintiffs sought to impose liability on the basis of inaction on the part of TMM and that there were no allegations regarding a defective appurtenance. *See id.* Therefore, the magistrate granted summary judgment to the defendant vessel owners TMM and Atlas. The plaintiffs now appeal.

## DISCUSSION

There are two issues that need to be confronted on appeal: (i) did the district court abuse its discretion in retaining the case after the federal sovereign was dismissed;[5] and (ii) if not, then did the district court properly find that the vessel owner was not liable for the stevedore's injuries that resulted from a hazardous condition known to both the vessel owners' representative and the stevedore? We find that the district court did not abuse its discretion in retaining the case because there was an independent basis of federal jurisdiction, and the case was near culmination. Further, the court properly granted summary judgment on the merits; therefore, WE AFFIRM.

i. Subject Matter Jurisdiction versus Removal Jurisdiction.

Appellants assert two arguments to support their contention that this case belongs in state

---

[5]Counsel for the appellants raised this argument for the first time at oral argument.

court.[6] First, once Pemex was dismissed, the federal court lost its jurisdiction because in FSIA cases the federal court has jurisdiction only to determine jurisdiction. If the federal court determines that it does not have jurisdiction over the foreign sovereign, it never acquires jurisdiction at all. Alternatively, the appellants argue that once Pemex was dismissed the original basis for removal jurisdiction disappeared, and the court abused its discretion by retaining the otherwise unremovable case.

In support of their position that once Pemex was dismissed the district court lacked subject matter jurisdiction, appellants rely principally on *Security Pac. Nat'l Bank v. Derderian,* 872 F.2d 281 (9th Cir.1989). In *Derderian,* the plaintiffs sued in state court to recover for the illegal conversion and forgery of an $852,000 check. *See id.* at 281. One of the defendants, Banco BCH, a bank owned by the government of Mexico, removed the case to federal district court pursuant to the removal provisions in the FSIA. *See* 28 U.S.C. § 1441(d).

Once in federal court, Banco BCH made a motion to dismiss based on the FSIA. *See* 28 U.S.C. § 1330, 1362 *et seq.* Prior to a decision on the motion to dismiss, Banco BCH was dismissed pursuant to a stipulation that was approved by the district court. The district court then allowed the case to proceed to trial on the merits against the remaining defendants without determining its jurisdiction over the pending claims. After the court awarded a judgment for the plaintiff Security Pacific against the defendants, an appeal was waged in the Ninth Circuit.

The Ninth Circuit noted the necessity of the district court to determine whether it has jurisdiction over the sovereign following FSIA removal. This necessity stems from the reality that in most instances subject matter jurisdiction over all of the parties hinges on that determination. *See id.* at 283-84. The *Derderian* panel had previously noted that after removal:

> [When] a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court *would have had original jurisdiction over the case had it been filed in that court.*

*Id.* at 283 (emphasis added) (*quoting Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 702, 92

---

[6]It is undisputed that without Pemex the case could not have been removed to federal court.

S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972).

The primary distinction between our case and *Derderian* stems from the fact that we have an alternative basis for federal jurisdiction. In *Derderian,* the plaintiff sued on state law claims and had no independent basis of subject matter jurisdiction. Therefore, once the foreign sovereign was dismissed, subject matter jurisdiction was entirely absent. However, in our case, upon removal, the court had two distinct grounds upon which to base subject matter jurisdiction: (i) the FSIA; and (ii) admiralty law. Consequently, when Pemex was dismissed, the FSIA dropped out of the picture, but admiralty law provided an independent basis of subject matter jurisdiction.

The appellants next argue that even if the court had subject matter jurisdiction, the court erred by failing to remand the case to state court. The appellants focus on the fact that the case could not have been removed, but for the FSIA. This is so because admiralty claims are subject to the "savings to suitors" clause,[7] which provides that they are non-removable. Therefore, although admiralty claims do provide subject matter jurisdiction, plaintiffs have the option to choose a state forum. In essence, the appellants argue that the spirit of the savings to suitors clause was violated because the district court retained jurisdiction over the case that now lacks removal jurisdiction.

To be sure, this case would not have been in federal court if Pemex was not made a party. While we are mindful that Pemex was ultimately dismissed, both parties concede that it was a valid party and, thus, provided a proper basis for removal. Further, once in federal court, extensive discovery took place culminating in the magistrate's ruling and recommendation. The appellants note that the case was properly removed, but in turn rely on *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371 (5th Cir.1980), which stated as follows:

> [W]hen the foreign sovereign is found to be immune and the source of federal removal jurisdiction is thereby withdrawn from the case, the district court is free to exercise its discretion to remand the remaining defendants to state court, and *in most instances* will no doubt do so.

---

[7]The savings to suitors clause provides that state courts may exercise concurrent jurisdiction over maritime claims. *See Linton v. Great Lakes Dredge & Dock Co.,* 964 F.2d 1480, 1484-85 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992). In fact, federal courts cannot exercise *removal* jurisdiction over claims subject to the savings to suitors clause. *See In re Dutile,* 935 F.2d 61, 63 (5th Cir.1991).

*Id.* at 1377 n. 6 (emphasis added).

This sets up the standard against which the district court's actions must be measured. Surely, when measuring a district court's actions in terms of discretion, reversal is only appropriate in instances of abuse. It is difficult to find an abuse in this case. Prior to dismissing the sovereign, the case had been pending for over sixteen months and the magistrate had issued a ruling and recommendation. The court rationally decided not to remand the case because it was ripe for decision.

There is overwhelming support for the proposition that the district court, sitting in diversity, in its discretion may retain jurisdiction over pendent state law claims even after all federal claims have been disposed of. *See Rosado v. Wyman,* 397 U.S. 397, 403-05, 90 S.Ct. 1207, 1213-14, 25 L.Ed.2d 442 (1970); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Kelly v. City of Leesville,* 897 F.2d 172, 174-75 (5th Cir.1990); *Grinter v. Petroleum Operation Support Serv., Inc.,* 846 F.2d 1006, 1008 (5th Cir.), *cert. denied,* 488 U.S. 969, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988).

While in the current context the court was not exercising pendent jurisdiction we note this line of authority as extremely persuasive. Surely, where as here, when the court has an independent basis of jurisdiction it should be granted even greater leeway. The rationale behind deference in this regard is to avoid relitigation, and needless waste of precious judicial resources. The retention of jurisdiction in this case forwarded these noble goals. Moreover, the court in this case did have subject matter jurisdiction because of the maritime claims. Therefore, the court below did not abuse its discretion by refusing to remand the case.

ii. Liability for a Stevedore's Injuries that Resulted from a Hazardous Condition Known to Both the Vessel's Owners and the Stevedore.

The district court held that the vessel owner cannot be held liable for a failure to intervene unless a defective appurtenance of the vessel caused or contributed to the injury. This is simply not the law in our Circuit. However, in most if not all of our cases, liability is normally premised on defects or dangerous conditions that are within the owner's control. These cases can be contrasted with situations that are exclusively within the control of the stevedore—such as loading. Liability in

our case, hinges upon whether or not the owners had a duty to intervene.

In *Gay v. Barge 266,* 915 F.2d 1007 (5th Cir.1990), the court stated: "[t]he vessel owner has a duty to intervene in the stevedore's operations when he has actual knowledge both of the hazardous condition and that the stevedore, in the exercise of "obviously improvident' judgment, intends to continue work in spite of that condition."[8] The *Gay* court reversed the summary judgment for the vessel owner because "[the vessel owner] was chargeable with knowledge that there was no safe means of access to the barge, and accordingly had a duty to remedy that situation before turning the vessel over to the stevedore." *Id.* Therefore, owner liability in *Gay* emanated from its failure to remedy a dangerous appurtenance of its ship.

In a footnote the *Gay* opinion cites to four decisions on the vessel owner's duty to intervene.[9] *Randolph,* not unlike *Gay,* involved whether or not the vessel was negligent in failing to take a gangway out of service. *See Randolph,* 896 F.2d at 971. Therefore, the liability in both *Randolph* and *Gay* was premised on an appurtenance of the ship.

Similarly, *Masinter* can also be distinguished on its facts. The *Masinter* court noted:

> In applying both *Scindia's* general rule and its exceptions we are persuaded that it is beyond peradventure that Marlin [the vessel owner] owed to Masinter [the stevedore] a duty of care to take precautions necessary to avoid exposing Masinter to the hazardous conditions created by the placement of the stairway. We reach this conclusion by noting that the present case does not involve a vessel owner "turning over" the control of the vessel to a stevedore or independent contractor. Rather, Marlin was contractually bound to conduct the drilling operations and remained in control of the vessel to effectuate this obligation.

*Masinter,* 867 F.2d at 897.

*Masinter* is therefore distinguishable on two grounds: (i) the vessel owner was in control of the vessel; and more importantly (ii) the dangerous condition was the placement of the stairway—an appurtenance of the ship.

In *Helaire,* the plaintiff was injured attempting to unload cargo during rough seas. He

---

[8] *Gay,* 915 F.2d at 1012 (*citing Randolph v. Laeisz,* 896 F.2d 964, 970 (5th Cir.1990)).

[9] *Gay,* 915 F.2d at 1012 n. 15 (*citing Randolph v. Laeisz,* 896 F.2d 964, 970 (5th Cir.1990); *Masinter v. Tenneco Oil Co.,* 867 F.2d 892, 897 (5th Cir.1989); *Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1038-39 (5th Cir.1983); *Turner v. Costa Line Cargo Services, Inc.,* 744 F.2d 505, 512 (5th Cir.1984 (Gee, J., dissenting)).

ineffectually complained to his immediate boss, the crane operator, that the conditions were too dangerous. The vessel owner was supervising the stevedore operations during the time of the injury. The facts in *Helaire* are similar to ours because neither the stevedore nor the owner were responsible for the danger. However, in the present case the vessel owner assumed no supervisory role.

In *Helaire,* the trial court had initially charged the jury on general tort principles of landowner liability. The Fifth Circuit remanded with the guidance that the owner could be held liable only if it knew of the condition; and that the stevedore was not adequately protecting the employee. This unmistakably contrasts with the magistrate's opinion.[10] The *Helaire* court reasoned:

> Once the loading operations have begun, the vessel owner can be held liable for injuries to employees of the stevedore resulting from open and obvious dangers only in the event of actual knowledge of the danger *and* actual knowledge that he cannot rely on the stevedore to remedy the situation.

*Helaire,* 709 F.2d at 1038-39 (emphasis in original).

Perhaps the seminal case in this area is *Futo v. Lykes Bros. S.S. Co.,* 742 F.2d 209 (5th Cir.1984). In *Futo,* Judge Garwood noted "this case concerns a failure to act on the part of the [vessel owner's employees] ... rather than any active negligence on their part." *Id.* at 214. The court reasoned that one cannot be liable for a failure to act unless one has an affirmative duty to act. The court then distinguished between those cases where the danger created involved the ship or its gear from those cases where the danger created was within the area of the stevedore's operations. In so noting *Futo* stated:

> To impose a duty to intervene on the shipowner, respecting dangers not created by it which are obvious to the stevedore's employees and arise during and in the area of the stevedore's operations, *something more* is required than the mere shipboard location of the dangerous situation and the shipowner's knowledge of it.

*Id.* at 215 (emphasis in original).

Ultimately, the *Futo* court found that the owner had no duty to intervene in the stevedore's operations despite the fact that it knew they were using a scaffold without a guardrail. The *Futo* facts are identical to ours in many respects: (i) no appurtenance of the ship was involved; (ii) in the danger

---

[10]The magistrate erroneously required that some appurtenance of the ship had to be involved in order to hold the vessel owner liable.

was not subsumed within stevedore expertise—a layman could have just as easily perceived the danger;  (iii) it was the owner's inaction that was the alleged basis of liability;  and (iv) the scaffold was a part of the stevedore's operations.

*Casaceli v. Martech Int'l, Inc.,* 774 F.2d 1322 (5th Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1516, 89 L.Ed.2d 914 (1986), formulated a six factor inquiry to be used when determining the vessel owner's duty to intervene.  *See id.* at 1328 (eliciting six factors from the *Futo* opinion). In *Casaceli,* the plaintiff was a diver's tender and employee of the stevedore.  He drowned while attempting to repair a propeller on the defendant's vessel.  The court made a noteworthy statement, which it garnered from *Futo:*

> The *Futo* court found that the *Scindia* exception does not extend to an open and obvious transitory condition created and controlled by the independent contractor, and wholly related to the contractor's gear and operations.  The missing guardrail was such a condition.

*Casaceli,* 774 F.2d at 1327 (citations omitted).

The *Casaceli* court went on to note:

> A distinction between defects in the ship itself and its gear, and defects not directly related to the ship, is logical since the owner is primarily responsible for the ship, gains the most from its proper maintenance, and can usually best comprehend the danger from a defect in the ship, its gear or equipment.

> *Scindia,* therefore, requires the existence of two basic conditions for the imposition of the shipowner's duty to intervene—the shipowner's actual knowledge of a danger to a longshoreman, and the shipowner's knowledge that the longshoreman's employer is not acting reasonably to protect its employees from that danger. The *Futo* court outlined considerations that pertain to the existence of these basic conditions:  [1] whether the danger was open and obvious;  [2] whether the danger was located within the ship or ship's gear;  [3] which party created the danger or used the defective item and was therefore in a better position to correct it;  [4] which party owned and controlled the defective item;  [5] whether an affirmative act of negligence or acquiescence in the use of a dangerous item occurred;  and [6] whether the shipowner assumed any duty with regard to the dangerous item.

*Casaceli,* 774 F.2d at 1328 (*citing Futo,* 742 F.2d at 218, 221).

Applying the *Casaceli/Futo* test to our situation leads to the conclusion that the owner did not have a duty to intervene.  Surely, in each of the previous cases that found owner liability there was either:  (i) some element of control;  or (ii) an appurtenance of the ship involved.  True, *Helaire,* comes close to the mark;  however, even in *Helaire,* the owner was supervising the stevedore's actions.  Significantly, that supervisory role satisfies the "something more" requirement alluded to in

*Futo.*

In this case there is simply nothing upon which to hold the owners liable—spare their knowledge. The cases are unanimous in stating the knowledge alone is not enough. We must be extremely careful, lest we open the floodgates to a new class of claims premised on every conceivable shred of owner knowledge. The "something more" requirement provides a useful and helpful threshold below which owners are not liable.

The vessel owners point to *Hunter v. Intreprinderea de Explore Flott Maritime Navrom,* 868 F.2d 1386 (5th Cir.1989) (per curiam) as their be-all and end-all savior. True, the Fifth Circuit affirmed a summary judgment in favor of the vessel owner on facts very similar to ours. In *Hunter,* the stevedore's employees were loading rice into the hold. The employees were loading the rice in part by hand. Further, they were cutting the slings in an open and obviously dangerous manner. The owner knew just as well as the stevedore that the practice was dangerous.

The *Hunter* court assumed that the stevedore's operations were dangerous and that the owner knew they were dangerous. The court tersely applied the *Casaceli* test and found the owner was not liable. The court stated: "the dangerous condition had nothing to do with the ship's gear; that the vessel did not own the defective item; that there was no allegation of an affirmative act of negligence by the vessel; and that the shipowner had not assumed any duty with regard to the dangerous condition." *Hunter,* 868 F.2d at 1388. The *Hunter* panel could just have easily stated that it did not find "something more" than knowledge.

Applying the *Casaceli* test to our situation also leads to the conclusion that the owners are not liable. The danger was open and obvious to both parties. There was no appurtenance of the ship involved. Neither party created the problem, and they both became aware of it simultaneously. There was no defective item; however, the loading process could properly be classified as within the stevedore's operations. Further, owner inaction rather than an affirmative act of negligence is at issue here. Finally, the owners did not assume any supervisory role or other duty. In short, the owners knew that the stevedore was attempting a dangerous method of loading the ship. However, not one of the *Casaceli* indicators points to owner liability.

## CONCLUSION

The court below properly retained jurisdiction over the case even after Pemex was dismissed. The absence of removal jurisdiction after the fact is irrelevant to subject matter jurisdiction once the case has been properly removed. The court did not abuse its discretion in retaining the case when it was so near resolution. Moreover, the court properly granted the owners summary judgment on the merits. Owner knowledge without "something more" is insufficient to confer liability in the stevedore context. Therefore, the judgment of the district court is AFFIRMED.