79 F.3d 26
 1996 A.M.C. 1476
 Lionel SINGLETON, Sr., Plaintiff-Appellee,
v.
GUANGZHOU OCEAN SHIPPING COMPANY, et al., Defendants.
GUANGZHOU OCEAN SHIPPING COMPANY, Defendant-Appellant,
v.
COOPER/T. SMITH STEVEDORING COMPANY, INC., Intervenor-Appellee.
 No. 94-30642.
 United States Court of Appeals,
Fifth Circuit.
 April 3, 1996.
 
 Christopher Ogilvie Davis, William J. Riviere, Phelps Dunbar, New Orleans, LA, Luther T. Munford, Phelps Dunbar, Jackson, MS, for Guangzhou Ocean Shipping Co.
 Robert Murray Johnston, Adams & Johnston, New Orleans, LA, for plaintiff-appellee.
 Alan G. Brackett, Hebert, Mouledoux & Bland, New Orleans, LA, for Cooper/T. Smith.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before KING, DAVIS and BARKSDALE, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 A shipowner appeals from the district court's imposition of liability for injuries to a longshoreman under 33 U.S.C. § 905(b), based on the Scindia duty to intervene. Finding no basis to impose liability on the shipowner, we reverse and render.
 
 I.
 
 2
 Lionel Singleton, a longshoreman employed by Cooper/T. Smith Stevedoring Company, Inc. ("CTS"), was severely injured while offloading zinc and aluminum ingots from the aft hold (Hold 1) of the M/V MA GUAN HAI. The vessel was owned by Guangzhou Ocean Shipping Company ("GOSCO"), an instrumentality of the government of the People's Republic of China, time chartered to Pacific Basin Shipping and Trading Company, Ltd., and sub-time chartered to Eurosteel Lines, Inc. ("Eurosteel").
 
 
 3
 The M/V MA GUAN HAI docked in New Orleans on June 1, 1988, carrying primarily a cargo of steel, but also zinc and aluminum ingots. CTS had been retained by Eurosteel to offload the ingots from Hold 1. After inspecting the holds and cargo and finding no deficiencies or dangerous conditions, CTS began unloading on June 2, 1988, using the ship's winch to lift the ingot bundles up through the hatch.
 
 
 4
 Lionel Singleton was injured on the morning of June 3, 1988. While he was standing on top of a tier of ingots attaching a winch sling to a bundle, the tier under him collapsed. Singleton was thrown to the deck and crushed under the falling bundles.
 
 
 5
 Singleton sued GOSCO and Eurosteel in state court and the suit was removed to the federal district court. CTS intervened seeking reimbursement pursuant to the LHWCA, 33 U.S.C. § 901, et seq., of all compensation and medical benefits paid to Singleton as a result of this accident. Before the trial, Singleton settled with Eurosteel.
 
 
 6
 Following a bench trial, the district court found that GOSCO was not liable under the first Scindia duty, the turnover duty. Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 167, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981). Based on expert testimony, the court concluded that the ingots were loaded, stowed, dunnaged and secured within the range of skilled and competent stevedoring practices and that the ingots arrived in New Orleans "securely intact, presenting no latent defect in the stow that a competent stevedore could not identify and cope with."
 
 
 7
 The court further found that the instability of the ingot tier which caused Singleton's fall was due to the faulty unloading procedure used by CTS. Because the stow was located forward of the hatch, the bundles to be unloaded in the sling were pulled off the tiers by the winch wires at an angle. This dragging of the bundles off the interior, unsupported tiers sent vibrations through the tiers, which destabilized the interior tiers and directly caused the tier collapse which injured Singleton. The court concluded that "CTS imprudently elected to unload with the quicker but riskier crane wire, and with forklifts inadequate to the task" and that this manner of unloading was "haphazard, unsafe, geared to productivity, and set the stage for Singleton's accident."
 
 
 8
 The district court, however, did find GOSCO liable for breach of the third Scindia duty, the duty to intervene. Id. at 175-76, 101 S.Ct. at 1626. The court found that Yu, the first officer and agent of the ship, knew of the unsafe unloading procedures of CTS and had a duty to intervene to stop a hazardous activity "being promoted by the obviously improvident judgment of the stevedore, as well as by the stevedore's use in a hazardous or 'defective' manner of equipment actually belonging to the vessel: the crane between the No. 1 and 2 holds."
 
 
 9
 The district court allocated fault 15% to GOSCO, 75% to CTS, and 10% to Singleton. CTS's fault was reallocated to GOSCO under the rationale of Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). This increased GOSCO's share of the damages to 90%. Judgment was entered in favor of Singleton against GOSCO for $1,340,634.52, together with pre-judgment interest at the Louisiana legal rate and post-judgment interest under 28 U.S.C. § 1961.
 
 
 10
 GOSCO filed a timely appeal and complained primarily of the finding of liability under the third Scindia duty. Singleton cross-appealed and challenged a factual finding by the district court. Our disposition of this appeal makes it unnecessary for us to consider Singleton's cross-appeal.
 
 II.
 
 11
 In Scindia, the Supreme Court held that generally the shipowner may rely on the stevedore to avoid exposing the longshoreman to unreasonable hazards and that the primary responsibility for the safety of the longshoremen rests on the stevedore. Scindia, 451 U.S. at 172, 101 S.Ct. at 1624. The Supreme Court described three limited circumstances in which the shipowner would be liable to the longshoremen. These three Scindia exceptions were summarized by this court in Pimental v. LTD Canadian Pacific Bul, 965 F.2d 13 (5th Cir.1992):
 
 
 12
 1) if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known.
 
 
 13
 2) for injury caused by hazards under the control of the ship.
 
 
 14
 3) if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of "obviously improvident" judgment, means to work on in the face of it and therefore cannot be relied on to remedy it.
 
 
 15
 Id. at 15 (citations omitted).
 
 
 16
 The dispositive question presented in this appeal is whether the district court erred in concluding that the shipowner was at fault for failing to intervene under (3) above.
 
 
 17
 Our cases make it clear that the shipowner's duty to intervene under Scindia 's third exception is narrow and requires "something more" than mere shipowner knowledge of a dangerous condition.
 
 
 18
 To impose a duty to intervene on the shipowner, respecting dangers not created by it which are obvious to the stevedore's employees and arise during and in the area of the stevedore's operations, something more is required than the mere shipboard location of the dangerous situation and the shipowner's knowledge of it.
 
 
 19
 Futo v. Lykes Bros. Steamship Co., 742 F.2d 209, 215 (5th Cir.1984). See also Casaceli v. Martech International, Inc., 774 F.2d 1322 (5th Cir.1985), cert. denied, 475 U.S. 1108, 106 S.Ct. 1516, 89 L.Ed.2d 914 (1986).
 
 
 20
 The district court found that the defective unloading procedure adopted by CTS created the dangerous condition that in turn caused Singleton's injury. This is fully supported by the record. CTS did not follow the proper procedure of moving the bundles of ingots directly under the hatch with a forklift before lifting the bundles directly out of the hold. Instead it used the ship's winch to drag the bundles at an angle off the tiers located forward of the hatch. This destabilized the interior tiers and led to the collapse of the tier.
 
 
 21
 The district court found that the shipowner knew of the dangerous condition CTS had created in the hold. Although GOSCO challenges this finding, we conclude that it is not clearly erroneous.
 
 
 22
 As we have stated in a number of decisions, however, the duty of the shipowner to intervene under Scindia cannot be established by simply proving that the shipowner knew of a dangerous shipboard condition created by the stevedore in its loading or unloading operations. Proof of "something more" is required. Singleton argues that he satisfied this additional element in this case by establishing that CTS personnel used the ship's winch to implement its defective unloading procedure. Singleton agrees that the winch had no defects that contributed to this accident.
 
 
 23
 CTS's use of the non-defective ship's winch does not satisfy the requirement that the injured longshoreman demonstrate something more than the shipowner's knowledge that the stevedore has created a dangerous condition in its loading or unloading operations. The ship turned a non-defective winch over to the stevedore to use in the stevedore's unloading operations. Whether the winch belonged to the ship or the stevedore, the shipowner was entitled to assume that the stevedore would use the winch properly. Thus, the ship's ownership of the non-defective winch in this context is legally inconsequential relative to the ship's duty to intervene. Consequently it does not provide the "something more" the longshoreman must establish to visit liability on the ship under Scindia 's third exception.
 
 
 24
 We reached a similar result in a closely analogous case, Williams v. M/V SONORA, 985 F.2d 808 (5th Cir.1993). In Williams, a longshoreman was injured while loading unstripped pipe, an operation known to be dangerous by both the stevedore and the shipowner. The shipowner initially refused the load of pipe because it arrived unstripped on the trucks. As in this case, the stevedore was using the ship's winch to load the pipe and the shipowner had knowledge of the dangerous procedure. We concluded that the shipowner had no duty to intervene unless some element of shipowner control over the dangerous procedure or some involvement of a "defective" ship appurtenance was present. Id. at 812. See also, Hunter v. Intreprinderea de Explore Flott Maritime Navrom, 868 F.2d 1386, 1388 (5th Cir.1989); Casaceli, 774 F.2d at 1327.
 
 III.
 
 25
 For the reasons stated above, we conclude that the district court erred in determining that GOSCO had a duty to intervene in CTS's unloading operation. The judgment in favor of Singleton is therefore reversed and judgment is rendered in favor of GOSCO.
 
 
 26
 REVERSED and RENDERED.