United States Court of Appeals,

Fifth Circuit.

No. 95-30974

Summary Calendar.

Craig MANUEL, Plaintiff-Appellant,

Fidelity & Casualty Company of New York, Intervenor, Plaintiff-Appellant,

v.

CAMERON OFFSHORE BOATS, INC., Defendant-Appellee.

Jan. 15, 1997.

Appeals from the United States District Court For the Western District of Louisiana.

Before POLITZ, Chief Judge, and JONES and WIENER, Circuit Judges.

POLITZ, Chief Judge.

Craig Manuel appeals the district court's dismissal of his 33 U.S.C. § 905(b) negligence claim. For the reasons assigned, we affirm.

*Background*

Manuel was an employee of Harrington Enterprises, Inc., a sandblasting and painting firm. In September 1990 Harrington was under contract to Texas Eastern Gas Pipeline Company to perform work on a fixed platform on the outer continental shelf.

On September 18 Manuel and several other employees were working aboard the M/V DAVIS McCALL III, a vessel owned and operated by Cameron Offshore Boats. Manuel was responsible for operating and monitoring Harrington's sandblasting equipment on the vessel, which at that time was moored adjacent to Texas Eastern's platform. Manuel and his supervisor were on the back deck of the boat in the "dog house" when Manuel heard a hissing sound. Manuel left the dog house and moved quickly toward the stern of the vessel where the sandblasting hoses, which extended from the vessel up to the platform, were located.

Upon reaching the stern Manuel saw a bubble developing on one of the sandblasting hoses.

1

Fearing that the hose would explode, Manuel ran toward the compressor to turn it off. As he ran his feet became entangled in an unused mooring line on the deck, causing him to fall, injuring both his left knee and back.

Manuel filed suit against, *inter alia,* Cameron,[1] claiming damages for its negligence under 33 U.S.C. § 905(b).[2] Fidelity & Casualty Company of New York, Harrington's insurer, intervened seeking recovery of compensation payments made to Manuel. After a bench trial the district court rendered judgment in favor of Cameron, concluding that Cameron had not breached any legal duty owed to Manuel under section 905(b). Manuel and Fidelity & Casualty appeal.

*Analysis*

We review the district court's findings of fact for clear error and consider all questions of law *de novo.*[3] The rulings on negligence and causation are findings of fact;[4] the determination of the existence *vel non* of a legal duty is a question of law.[5]

Under section 905(b) a vessel owner owes three specific legal duties to independent contractors working on the vessel: (1) the turnover duty, (2) the duty to protect against hazards

---

[1]Defendants Marathon Oil Company and Texas Eastern were both dismissed prior to trial.

[2]This subsection reads in pertinent part as follows:

> **(b) Negligence of Vessel.** In the event of injury to a person covered under this Chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.
>
> The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this Chapter.

[3]*Mendes Junior Int'l Co. v. M/V Sokai Maru,* 43 F.3d 153 (5th Cir.1995).

[4]*Bertram v. Freeport McMoran, Inc.,* 35 F.3d 1008 (5th Cir.1994).

[5]*Forrester v. Ocean Marine Indem. Co.,* 11 F.3d 1213 (5th Cir.1993).

arising in areas or equipment under the vessel's active control, and (3) the duty to intervene when the vessel owner knows of a serious hazard and the stevedore improvidently decides to ignore that risk.[6] Neither the parties nor the record suggest that the third duty is an issue in this case. We proceed, therefore, to a discussion of the first two.

The Supreme Court has described the contours of the turnover duty as follows:

> A vessel must exercise ordinary care under the circumstances to turn over the ship and its equipment and appliances in such condition that an expert and experienced [independent] contractor, mindful of the dangers he should expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care to carry on ... operations with reasonable safety to persons and property.[7]

The record reveals that Manuel and his supervisor knew that the shorn mooring line was lying on the deck and that they repeatedly worked around it without incident during the course of their sandblasting operations. Further, the Harrington crew could have remedied the hazard very easily by exercising ordinary care, i.e., by simply moving the rope out of their way. The district court did not err in concluding that the vessel owner was entitled to rely upon Harrington to exercise such care within the confines of its workplace, and that no turnover duty owed by the vessel was breached.

Manuel observes, correctly, that an open and obvious danger is not a complete bar to liability for a breach of the turnover duty.[8] While the apparent nature of the hazard is not an automatic bar to Manuel's recovery, he is nevertheless unable to reconcile the facts of this case with our jurisprudence delineating the legal duties owed, respectively, by the vessel owner and the independent

---

[6]*Scindia Steam Nav. Co. v. De los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); *Burchett v. Cargill, Inc.,* 48 F.3d 173 (5th Cir.1995). Although posited in *Scindia* in terms of stevedoring operations, our jurisprudence generally has extended this reading of the section 905(b) negligence action to other independent contractors falling under the Longshore and Harbor Worker's Act. See, e.g., *Teply v. Mobil Oil Corp.,* 859 F.2d 375 (5th Cir.1988); *Hill v. Texaco, Inc.,* 674 F.2d 447 (5th Cir.1982).

[7]*Howlett v. Birkdale Shipping Co., S.A.,* 512 U.S. 92, ----, 114 S.Ct. 2057, 2063, 129 L.Ed.2d 78 (1994) (internal quotations marks omitted) (citations omitted). A corollary to this turnover duty requires the vessel owner to warn the independent contractor of hidden hazards or defects in the vessel. *Id.* This aspect of the turnover duty is not implicated by the facts of this case.

[8]*Teply.* Contrast *Polizzi v. M/V Zephyros II Monrovia,* 860 F.2d 147 (5th Cir.1988) (discussing corollary duty to warn of hidden hazards or defects).

contractor.[9]   We have long held that when an independent contractor has actual knowledge of a remediable hazardous condition the vessel owner's turnover duty is not implicated unless the contractor's "only alternatives would be to leave his job or face trouble for delaying work."[10]  Given the absence of any such showing Manuel's contention must be considered an invitation to expand the turnover duty of the vessel owner under section 905(b) well beyond the bounds articulated by the Supreme Court in *Scindia,* an invitation which we must decline.[11]

Manuel also invokes the second duty owed by the vessel owner, namely that "a shipowner must exercise reasonable care to prevent injuries to [independent contractors] in areas that remain under the active control of the vessel."[12]  This duty recognizes that although a vessel owner no longer retains the primary responsibility for safety in a work area turned over to an independent contractor, no such cession results as relates to areas or equipment over which the vessel's crew retains operational control.[13]  The record reflects that the back deck where Manuel's accident occurred was being used by Harrington employees to house and operate their sandblasting equipment.  There is no evidence that the vessel's crew was active in that area while the Harrington crew was at work.  In the absence of any proof that this area was within the active control of the vessel, we must agree with the district court that the vessel owner had no general duty to remedy hazards arising there.  The

---

[9]See, e.g., *Williams v. M/V SONORA,* 985 F.2d 808 (5th Cir.1993).

[10]*Morris v. Compagnie Maritime Des Chargeurs Reunis, S.A.,* 832 F.2d 67, 70 (5th Cir.1987) (listing cases), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988).

[11]*Scindia.*  Manuel relies upon the Ninth Circuit's expansive reading of the vessel owner's duty in *Riggs v. Scindia Steam Nav. Co.,* 8 F.3d 1442 (9th Cir.1993), *vacated and remanded,* --- U.S. ----, 114 S.Ct. 2701, 129 L.Ed.2d 830 (1994).  That opinion was vacated by the Supreme Court and remanded for further consideration in light of *Howlett.*  On remand, the Ninth Circuit reversed its previous position and affirmed a grant of summary judgment in favor of the vessel owner. *Riggs v. Scindia Steam Nav. Co., Ltd.,* 35 F.3d 1466 (9th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1694, 131 L.Ed.2d 558 (1995).

[12]*Howlett* at ----, 114 S.Ct. at 2063 (internal quotation marks omitted) (citation omitted).

[13]*Pimental v. LTD Canadian Pacific Bul,* 965 F.2d 13 (5th Cir.1992);  *Masinter v. Tenneco Oil Co.,* 867 F.2d 892 (5th Cir.1989).  As we have stated previously, the duty to intervene is not implicated in this case.

4

district court did not err in finding and concluding that Cameron breached no duty owed to Manuel.

AFFIRMED.

\* \* \* \* \* \*