# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 97-31280
Summary Calendar

---

IN RE:   In the Matter of NATIONAL MARINE, INC., as owner
of the DM-1311, for exoneration from or limitation of liability.

NATIONAL MARINE, INC., as owner of the DM-1311, for exoneration
from or limitation of liability,

Petitioner-Appellee,

versus

ZEPHYRAIN VICKNAIR,

Claimant-Appellant.

\*   \*   \*   \*   \*

---

No. 98-30189
Summary Calendar

---

IN RE:   In the Matter of NATIONAL MARINE, INC., as owner
Of the DM-1311, for exoneration from or limitation of liability.

NATIONAL MARINE, INC., as owner of the DM-1311, for
exoneration from or limitation of liability,

Plaintiff-Appellee,

versus

SOURS GRAIN COMPANY,

Defendant-Appellee,

versus

ZEPHYRAIN VICKNAIR,

Claimant-Cross-Claimant Appellant.

\*   \*   \*   \*   \*

ZEPHYRAIN VICKNAIR,

Plaintiff-Appellant,

versus

SOURS GRAIN COMPANY, INC.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
(96-CV-3144-D)

---

December 11, 1998

Before POLITZ, Chief Judge, KING and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:[*]

Zephyrain Vicknair appeals an adverse summary judgment in favor of defendant National Marine, Inc. and Bunge Corporation, and the grant of a motion to dismiss based on lack of *in personam* jurisdiction over defendant Sours Grain Co. For the reasons assigned, we affirm the rulings in favor of National Marine, Inc. and Sours Grain Co., and we dismiss Vicknair's appeal against Bunge Corporation.

## BACKGROUND

Vicknair worked as a laborer and bargeman for Bunge Corporation at its facility in Destrehan, Louisiana. According to Vicknair's allegations he slipped on rotten grain or other material on the deck of a barge while engaged in unloading operations. Vicknair alleged that the barge on which he slipped was owned by National Marine and that the grain that had caused the accident had been sold to National Marine and loaded on the barge by Sours Grain. Vicknair sued Bunge

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

under the Jones Act and general maritime law, later amending his petition to name National Marine as an additional defendant. Bunge filed a cross claim against National Marine for contribution and indemnification. National Marine then filed a limitation complaint. Thereafter Vicknair made Sours Grain an additional defendant.

The district court dismissed Sours Grain from the limitation proceeding without prejudice, and Vicknair promptly sued Sours Grain. This action was consolidated with the limitation proceeding. The district court then granted Bunge's motion for summary judgment, holding that Vicknair was not a Jones Act seaman. In due course the district court granted National Marine's motion for summary judgment and dismissed the action against Sours Grain, finding no *in personam* jurisdiction. The instant appeal followed.

## ANALYSIS

On appeal, Vicknair contends that the district court erred in granting a motion for summary judgment in favor of National Marine because there were significant issues of material fact in dispute, and erred in dismissing his action against Sours Grain for lack of *in personam* jurisdiction.

### *National Marine's Motion for Summary Judgment*

Summary judgment is appropriate when the record discloses that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[1] In determining whether summary judgment was appropriate, we conduct a *de novo* review, judging the facts in the light most favorable to the non-

---

[1] Fed. R Civ.P. 56(c); **City of Arlington v. FDIC**, 963 F.2d 79 (5th Cir. 1992).

movant.[2]

In earlier dismissing Vicknair's claim against his employer Bunge, the court had found that Vicknair was not a seaman for purposes of the Jones Act. We agree.[3] Because Vicknair is not a seaman, his only claim against National Marine is for vessel negligence under 33 U.S.C. § 905(b), the Longshore and Harbor Worker's Compensation Act. The Supreme Court in **Scindia Steam Navigation Co. v. De Los Santos**[4] held that a vessel owner will be liable under this section only when one of the following occurs: 1) on turning over the ship, the vessel owner fails to warn of hidden defects of which he should have known (the "turnover duty"); 2) the hazards are under the control of the vessel owner (the "active operations duty"), or 3) the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge of both the hazard and that the stevedore, in the exercise of obviously improvident judgment, means to work on in the face of the hazard and thus cannot be relied on to remedy it (the "duty to intervene").[5]

Vicknair contends that the spilled grain was a latent hidden defect, and thus National Marine breached its duty to warn of it when it turned over the vessel to the

---

[2]**Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.**, 55 F.3d 181 (5th Cir. 1995).

[3]Vicknair was employed by Bunge as both a laborer and a bargeman and often worked unloading barges at Bunge's facility. The district court appropriately found that Vicknair was not a seaman under **Chandris, Inc. v. Latsis**, 515 U.S. 347 (1995), because he neither contributed to the function of the vessel nor had a substantial connection to a vessel or fleet of vessels in navigation.

[4]451 U.S. 156 (1981).

[5]**Id.**; **Pimental v. LTD Canadian Pacific Bul**, 965 F.2d 13 (5th Cir. 1992).

stevedore. The turnover duty is not breached, however, when the defect is both open and obvious and one which the longshoreman should have seen.[6] Vicknair contends that the lighting at the wharf at the Bunge facility was inadequate and thus he could not see the spilled grain. This contention, even if true, does not implicate a breach of the turnover duty by National Marine because that duty extends only to those hazards known or which should have been known to the vessel in the exercise of reasonable care.[7] In the instant case, it was Bunge's duty to provide lighting on the wharf and a safe workplace for its stevedoring operations.[8] Because of this duty, and because of our holdings that spills or slippery conditions of a similar nature to that of spilled grain are not hidden defects giving rise to liability under § 905(b),[9] we agree with the district court that the spilled grain was an open and obvious condition of which National Marine had no duty to warn.

Vicknair also contends that National Marine breached the second **Scindia** duty, the active operations duty, as it failed to exercise reasonable care in preventing injuries in an area under its control. Specifically, Vicknair contends that National Marine retained control of its vessels, which it charters via bareboat charter to independent operators, through its dispatchers who communicate directly

---

[6]**Pimental.**

[7]**Howlett v. Birkdale Shipping Co., S.A.** 512 U.S. 92 (1994).

[8]**Greenwood v. Societe Francaise De**, 111 F.3d 1239 (5th Cir.), *cert. denied*, 118 S.Ct. 558 (1997); **Burchett v. Cargill, Inc.**, 48 F.3d 173 (5th Cir. 1995).

[9]**Burchett** (holding that dew and soybean dust present on hatch covers was not hidden defect); **Pimental** (holding that oil and grease on crane holding was an open and obvious defect).

5

with the captain or pilot. Vicknair has presented no evidence, however, that the vessel's captain or crew retained control over the area in which the grain was spilled, or that there was any personnel present from the vessel in the area of the accident at the time of the accident. We have held that absent any proof of actual control or presence of captain or crew, a vessel owner has no general duty to remedy any hazards that may arise in an area.[10] The stevedore, and not the vessel owner, is responsible for hazards arising after the vessel owner has turned over an area for stevedoring operations.[11]

Finally, Vicknair does not contend, nor does the record support the finding that the third **Scindia** duty, the duty to intervene, was breached. Persuaded that Vicknair has failed to establish liability under 33 U.S.C. § 905(b), we conclude and hold that the district court did not err in finding that Vicknair is not entitled to recover from National Marine as a matter of law.

*Sours Grain's Dismissal for Lack of in personam Jurisdiction*

Vicknair challenges the trial court's holding that Sours Grain lacked the requisite minimum contacts with the forum state, and therefore maintenance of a suit against it offended "traditional notions of fair play and substantial justice."[12] He contends that because Sours Grain regularly sells grain to National Marine, a Louisiana company, and the controversy arose out of such a sale, Sours Grain has

---

[10]**Manuel v. Cameron Offshore Boats, Inc.**, 103 F.3d 31 (5th Cir. 1997); **Burchett.**

[11]**Fontenot v. United States,** 89 F.3d 205 (5th Cir. 1996); **Pimental**.

[12]**International Shoe Co. v. Washington**, 326 U.S. 310, 316 (1945).

availed itself of the benefits and protections of Louisiana law. Relying on **Worldwide Volkswagen Corp. v. Woodson**,[13] Vicknair further asserts that Sours Grain's placing of its product in the stream of commerce with knowledge that it would be used in Louisiana satisfied the minimum contacts requirement.

We review *de novo* the district court's dismissal for lack of *in personam* jurisdiction.[14] Because the Louisiana Long Arm Statute reaches as far as constitutionally permitted, our inquiry is one of due process only.[15] Due process requires that the defendant have established minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."[16] A defendant has minimum contacts required by due process when he has purposely directed his activities at the forum state and has invoked the benefits of its laws, so that he could reasonably anticipate being haled into court in that state.[17]

A review of the record and the briefs, however, reveals no evidence that Sours Grain purposely directed its activities at Louisiana. It did not solicit business, transact business, or contract to supply services or things in Louisiana.

---

[13]444 U.S. 286 (1980).

[14]**Allred v. Moore & Peterson**, 117 F.3d 278 (5th Cir. 1997), *cert. denied,* 118 S.Ct. 691 (1998).

[15]La.R.S. 13:3201(B); **DeReyes v. Marine Management & Consulting, LTD.**, 586 So.2d 103 (La. 1991).

[16]**Asahi Metal Indus. v. Superior Court**, 480 U.S. 102, 113 (1987); **International Shoe**, 326 U.S. at 316.

[17]**Burger King Corp. v. Rudzewicz**, 471 U.S. 462 (1985); **World-Wide Volkswagen**.

Further, Sours Grain had no interest in the destination of the grain after it was loaded on the barges. Sours Grain merely loaded grain onto a barge from its own facility in Illinois. Apart from this and other fortuitous contacts with a Louisiana company, Vicknair has failed to present any connection between Sours Grain and the forum that would justify haling Sours Grain into court there.

Nor do we find merit in Vicknair's contention that Sours Grain created sufficient contacts with the forum when it placed the grain in the stream of commerce. **World-Wide Volkswagen** teaches that mere foreseeability that a product will arrive in a forum, absent some purposeful activity directed at the forum, is not a sufficient benchmark for jurisdiction under the due process clause.[18] Having found that Sours Grain did not direct its activities at Louisiana, we conclude that Vicknair's stream of commerce analysis must also fail. Accordingly, we affirm the district court's dismissal of Sours Grain for lack of *in personam* jurisdiction.

## *The Appeal against Bunge*

Vicknair raises no issue in his brief against Bunge and that part of his appeal is dismissed.[19]

## *Conclusion*

The judgments in favor of National Marine and Sours Grain are AFFIRMED. The appeal against Bunge is DISMISSED.

---

[18]**World-Wide Volkswagen**.

[19]**In Re Tex. Mortgage Servs. Corp.**, 761 F.2d 1068 (5th Cir. 1985); **Martin v. Atlantic Coast Line R.R.**, 289 F.2d 414 (5th Cir. 1961).