**Martin PENA, Plaintiff,**

v.

**KEYSTONE SHIPPING CO., Defendant.**

**No. Civ.A. G–00–148.**

United States District Court, S.D. Texas, Galveston Division.

May 21, 2001.

---

Edward J. Patterson, Jr., Royston Ray-zor et al., Galveston, TX, for Ed Patterson, mediator.

Deborah Lee Bradley, Stern and Miller, Houston, TX, for Martin Pena, plaintiff.

James T. Brown, Legge Farrow Kimmitt and McGrath, Houston, TX, for Keystone Shipping Company, defendant.

## ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDG-MENT

KENT, District Judge.

Plaintiff Martin Pena brings this action for personal injuries sustained aboard the S.S. DENALI. Now before the Court is Defendant Keystone Shipping Co.'s ("Keystone") Motion for Summary Judgment. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

In September 1997, Plaintiff was working as part of a riding crew aboard the S.S. DENALI—a vessel owned by Defendant Keystone. However, Keystone did not employ the Plaintiff. Instead, Coastal Hydro Services, Inc. ("Coastal Hydro"), an independent contractor and non-party to this litigation, was Plaintiff's employer.

Plaintiff and other members of the riding crew were at work aboard the DENA-LI, on September 18, 1997, mucking out the ship's double bottom. After completing this work, Plaintiff was walking along a crossbeam toward a ladder in order to climb out of the double bottom. Plaintiff alleges that he slipped while walking along this beam, causing him to fall, injuring his left knee.

Plaintiff filed suit in this Court on March 13, 2000, asserting causes of action for negligence and unseaworthiness of the vessel against Defendant Keystone. Defendant now moves for summary judgment, contending, essentially, that it has breached none of the duties owed to the Plaintiff under the applicable law.

## II. DISCUSSION

A. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See*

*id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 693 (S.D.Tex. 1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue

for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

### B. *Applicability of the LHWCA*

■ The parties implicitly agree that the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq., applies to this action, provided that Plaintiff suffered injury within the Act's jurisdictional reach. The LHWCA, by its own terms, applies only to injuries arising "upon the navigable waters of the United States." 33 U.S.C. § 903(a). Accordingly Plaintiff argues, as he must, that he was not injured on the United States' navigable waters. In this regard, Plaintiff introduces equivocal evidence that this injury occurred somewhere in the Pacific Ocean. Therefore, Plaintiff contends that the LHWCA does not apply. Unfortunately for Plaintiff, the legal component of his argument is incorrect.

■ The Fifth Circuit squarely addressed Plaintiff's argument some years ago. *See Reynolds v. Ingalls Shipbuilding Div., Litton Sys., Inc.,* 788 F.2d 264 (5th Cir.1986). In *Reynolds,* the Court went to great lengths to explain that the navigable waters of the United States stretch all the way to the territorial waters of other nations, thus encompassing the high seas. *See Reynolds,* 788 F.2d at 268–69. Accordingly, longshoreman who "happen to be on the high seas" remain covered by the LHWCA. *Id.* at 272. Plaintiff introduces no evidence that he suffered injury while within the territorial reach of a foreign nation; thus the LHWCA applies.

### C. *What Causes of Action are Available?*

#### 1. *"Sieracki" Seaman Unseaworthiness*

■ Plaintiff asserts a so-called *"Sieracki"* seaman claim of unseaworthiness versus Defendant Keystone. However, the 1972 amendments to the LHWCA

abolished a shipowner's *Sieracki* liability for unseaworthiness *vis a vis* longshoreman. *See Aparicio v. Swan Lake*, 643 F.2d 1109, 1115 (5th Cir. Unit A April 27, 1981). Therefore, if an injured plaintiff is covered by the LHWCA, the plaintiff cannot bring an unseaworthiness cause of action versus the vessel owner. *See Aparicio*, 643 F.2d at 1118 (holding that the *Sieracki* doctrine survives only as to maritime workers not covered by the LHWCA); *see also Smith v. Harbor Towing & Fleeting, Inc.*, 910 F.2d 312, 313–14 (5th Cir.1990). The Court has concluded that Plaintiff falls within the statutory coverage of the LHWCA. Accordingly, Plaintiff cannot bring an unseaworthiness action versus Defendant Keystone.

### 2. LHWCA Negligence Claims

■ Although Plaintiff cannot bring an unseaworthiness action against Keystone, Plaintiff can bring a negligence action pursuant to the LHWCA, 33 U.S.C. § 905(b). Under the LHWCA, Keystone, as the vessel owner, owed three specific legal duties to Plaintiff: (1) the turnover duty, (2) the duty to protect against hazards arising in areas or equipment which remain under the vessel's active control, and (3) the duty to intervene when the vessel owner knows of a serious hazard and the contractor improvidently decides to ignore that risk. *See Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 33 (5th Cir.1997) (citing *Scindia S.S. Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981)); *accord Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1246 (5th Cir.1997).

■ Plaintiff argues that he has introduced sufficient summary judgment evidence to implicate Keystone's turnover duty. The Court agrees, albeit just barely. The turnover duty requires the ship-

owner to exercise ordinary care in turning over the "gear, equipment, tools and workplace" to the independent contractor. *Polizzi v. M/V Zephyros II Monrovia*, 860 F.2d 147, 149 (5th Cir.1988); *accord Greenwood*, 111 F.3d at 1246. In complying with this duty, however, the vessel must only warn the contractor of latent hazards known or reasonably knowable to the shipowner. *See Greenwood*, 111 F.3d at 1246. Thus, there is no duty to warn of those dangers that are obvious to an experienced contractor. *See id.*

Plaintiff introduces evidence that he was injured because of insufficient lighting in the ship's double bottom. However, Plaintiff's own evidence seemingly establishes that it was not the vessel's duty to supply this lighting. Moreover, it seems improbable that broken flashlights could be a latent hazard (even if supplied by Keystone) as the lack of light may well be the epitome of an obvious hazard.

■ Nonetheless, an important caveat to the turnover duty is conceivably invoked by Plaintiff's scant facts. This exception provides that a vessel owner may be liable for even an obvious danger, here the dark, if the contractor's "only alternative[ ] would be to leave his job or face trouble for delaying work." *Manuel*, 103 F.3d at 34 (quoting *Morris v. Compagnie Maritime Des Chargeurs Reunis, S.A.*, 832 F.2d 67, 70 (5th Cir.1987)). Plaintiff has introduced some evidence (the alleged statement of Plaintiff's supervisor to the Plaintiff) that the Captain told Plaintiff's supervisor to keep his crew working, thus placing pressure upon the riding crew to continue working despite broken lighting.[1]

### III. CONCLUSION

As set forth above, Defendant's Motion for Summary Judgment is **GRANTED** in part, and **DENIED** in part. In this re-

---

**1.** Defendant argues in its Reply Brief, that this testimony is inadmissable hearsay within

hearsay. While likely correct, the Court overrules this objection for now, reserving its final

gard, Plaintiff's unseaworthiness claim based upon the *Sieracki* seaman doctrine is **DISMISSED WITH PREJUDICE.** However, while the Court's impression is that Plaintiff's evidence is extremely unlikely to carry the day, Plaintiff's LHWCA negligence cause of action shall go forward.

At this juncture, the Court strongly encourages the parties to consider an amicable resolution of this matter. In this respect, however, the Plaintiff should carefully consider the relatively low value that the Court perceives this case to have in light of paltry liability facts. It is simply difficult for the Court, on the facts as known, to so much as conjure up a series of provable events that will ultimately implicate any of Defendant's LHWCA duties.

**IT IS SO ORDERED.**

consideration under Fed.R.Evid. 801–807 for trial.